### Thomas S. Negus & another *vs.* Michael H. Simpson.

A written contract for supplies for a vessel for which the master has authority to bind the owners is binding on them if such appears to be the intention as gathered from the whole instrument, although signed by him in his own name only.

The authority of the master of a vessel to bind the owners by a contract in a foreign port for the necessary supply of a chronometer for her includes authority to obtain a chronometer by hiring with an option of purchase.

The ports of the several states of the United States are to each other foreign ports, as regards the authority of masters of vessels lying therein to pledge the credit of the owners for supplies necessary for their vessels.

No demand or notice is necessary before bringing an action on a contract after the expiration of a definite time which by the terms of the contract was fixed for its performance.

In an action for the value and hire of a chronometer delivered five years previously, on hire, to the master of a vessel, under a contract to return it at the end of a voyage from New York to Callao and back, on which the vessel was then bound, or within fourteen months, but with an option of purchasing it within six months from the date of delivery, the objections that there was no evidence at the trial that the voyage had come to an end or that the option of purchase had not been exercised, neither of which issues was specially made in the pleadings, are not open to the defendant at the argument of a bill of exceptions in which no question of law is raised in regard to them and the evidence thereon, if any, is not reported.

The material part of a contract, made by the master, and binding on the owners, of a ves

sel bound on a certain voyage, was thus: "Received of N. & Co., on account of vessel and owners, a chronometer, Name N., No. 1166, Value $240, on hire," "at the rate of six dollars per month until the said chronometer shall be returned to them," "to be returned" "at the expiration of the present voyage, or within fourteen months from the date hereof, in the same good order as received." The master "has the privilege of buying this chronometer within six months from date for $240 cash." In an action by N. & Co. against the owners of the vessel for failing to return the chronometer as stipulated, *Held,* that the measure of damages was the stipulated hire of the chronometer for fourteen months, with its value at the end of that time, and with interest from that time on the whole amount so ascertained; and that the recital of a value in the contract was not conclusive as to the value, although proper to be considered by the jury in assessing the same.

CONTRACT for the value and hire of a chronometer. Writ dated December 15, 1866. The principal count of the declaration was as follows: " And the plaintiffs say that the defendant made a certain contract in writing with the plaintiffs, a copy of which is as follows, namely : ' New York, November 20, 1861. Received of T. S. Negus & Co., on account of vessel and owners, a chronometer, Name Negus, No. 1166, Value two hundred and forty dollars, on hire, for the use of which we jointly and severally promise to pay to them at and after the rate of six dollars per month until the said chronometer shall be returned to them, or until they shall be served with a protest of the loss, if any, of the same. The said chronometer is to be used on board the good and seaworthy ship called the Rose Standish, whereof H. D. Hutchings is master, and bound for Callao and back to New York, and is to be returned to the said T. S. Negus & Co., without expense to them and without charge or claim for salvage and general average, at the expiration of the present voyage, or within fourteen months from the date hereof, in the same good order as received. Insured by T. S. Negus & Co. against unavoidable damage or total loss by fire or water, at sea : all and every other risk or risks whatever are taken by the undersigned. Captain Hutchings has the privilege of buying this chronometer within six months from date for $240 cash, without charge for hire, but is to pay insurance $6 per six months, rate of $1 per month. H. D. Hutchings, Master Ship Rose Standish.' And the plaintiffs further say that the defendant was on said 20th of November 1861 owner of said ship called the Rose Standish, and that the said H. D. Hutchings was then and there

master of said ship and agent of the defendant; that said ship was not then in her home port; that said chronometer was reasonably fit and proper for said ship for use in her navigation; that said chronometer was on said 20th of November delivered to said ship, and has not been returned to the plaintiffs, and they have not been served with a protest of the loss, if any, of the same. And the defendant owes the plaintiffs the value of said chronometer as stated in said written contract, and hire for the use of the said chronometer from said 20th day of November 1861 to the date of the writ in this action." There was also a count on an account annexed for the value of a chronometer, $240, and for the hire of it from November 20, 1861, to the date of the writ, at $6 per month. The answer was a general denial of the plaintiffs' claim; with special allegations that at the time of the alleged contract the vessel was already provided with a suitable chronometer, and that her master had no authority to bind the owners by such a contract.

At the trial in the superior court, before *Wilkinson, J.,* the plaintiffs, who were dealers in chronometers, doing business in New York City under the firm of T. S. Negus & Co., introduced evidence tending to show that in November 1861 the ship Rose Standish, which was registered in the port of Boston and owned by the defendant, who resided in Massachusetts, was in the port of New York, bound on a voyage to Callao, when her master received from the plaintiffs the chronometer in question and executed the writing above set forth; that the ship sailed on her said voyage; that the chronometer had never been returned to the plaintiffs; and that no protest of the loss of it had been served upon them. " The defendant introduced no evidence to show what had become of the chronometer, or how long it had been used by the vessel. It also appeared in evidence that the vessel had a chronometer on board, belonging to the defendant, when the plaintiffs' chronometer was hired. The plaintiffs then introduced evidence tending to show that the defendant's chronometer was an old one, and did not keep accurate time, and could not be relied on to perform the service for which a chronometer was used on a vessel; and that two good

chronometers were reasonably fit and proper for a vessel on such a voyage, for use in her navigation. There was no evidence of a demand prior to bringing the suit."

" The defendant contended and asked the judge to rule that the contract was the personal contract of the master, and if not, that the master had no authority to make such a contract to bind him without notice, and without some other authority than his position as master gave him; that the port of New York was not a foreign port, so as to give the master greater authority than he would have in the port of Boston to bind his owner; that, as the vessel had already a chronometer on board, which was known to the plaintiffs, the master could not hire another so as to bind him; that, if the master had authority to bind him by purchase, yet he could not make this contract for hire so as to bind him; that on the declaration the plaintiffs could not recover for anything but the hire; that they could not recover the value of the chronometer, and in no event could they recover until a demand had been made on the defendant; that, if they could recover at all for the value of the chronometer under the contract, they could recover only the value without the hire; and that at all events the damages should not exceed $240, with the interest and insurance."

But the judge declined so to rule; and instructed the jury " that the master of a Boston vessel, appointed by the owner, and sailing the ship on account of the owner, has authority in New York to procure for the vessel, and to bind the owner thereby, whatever is necessary for the vessel in her navigation, having regard to the voyage on which the vessel is about to sail, without notifying the owner; that, if the plaintiffs' chronometer was necessary for the safe navigation of the defendant's vessel, the master had authority to hire it, and bind the defendant, whether such necessity was caused by the chronometer which the vessel had being insufficient, or by two chronometers being necessary on such a voyage; and that the jury were to determine whether two chronometers were necessary on such a voyage, and, if only one was necessary, whether that which the vessel already had was a suitable chronometer; that the con-

tract in this case was not the personal contract of the master but was made by him in behalf of the defendant, and that the defendant was liable under it, if the jury found that the chronometer was necessary ; that, as there was no evidence that the master or the defendant had elected to purchase the chronometer under the contract, the plaintiffs were not restricted to the value of the chronometer with interest and insurance ; and that, if the jury found for the plaintiffs, the measure of damages was the value of the chronometer as stated in the contract, $240, with hire for fourteen months, and interest on these two sums from the date of the writ."

The plaintiffs then asked for a further instruction " that they were entitled to interest on the two sums mentioned (namely, the value, and the fourteen months' hire) from the expiration of the fourteen months ; but the judge declined so to rule.

The jury returned a verdict for the plaintiffs; and assessed damages in conformity with the instructions ; and both the defendant and the plaintiffs alleged exceptions, the latter as to the rule of damages only.

*W. Brigham,* for the defendant.

*J. Lathrop,* for the plaintiffs.

COLT, J. The form in which the contract with the plaintiffs is drawn and subscribed in this case does not make it the personal obligation of the master alone. In writings of this description, the intention as gathered from the whole instrument controls. They are not governed by the strict rule, applicable only to sealed instruments and negotiable paper, which requires the signature to be in the name of the principal. Met. Con. 106. *Barlow* v. *Congregational Society in Lee,* 8 Allen, 460.

The authority of the master in a foreign port to make such a contract is well established, if the article procured is reasonably necessary and proper, having regard to the condition of the ship and the voyage on which she is bound. Under the instructions of the court, the jury must have found that the chronometer was necessary, either because the one which the vessel then had was imperfect, or because two were necessary on such a voyage. The authority to supply the ship by purchase implies the power

to obtain by hiring with an option to purchase. Such contracts were recognized as binding upon the owner in *Bliss* v. *Ropes*, 9 Allen, 339, and *Bond* v. *McKinnon*, Ib. 344. The ports of the several states of the Union are as to each other to be regarded, in questions like this, as foreign ports. *Stearns* v. *Doe*, 12 Gray, 485.

We do not see that the declaration restricts the plaintiffs from recovering in this action all the damages which the breach of contract proved entitles them to. Nor was a demand necessary before bringing the action. When by the terms a definite time is fixed for the performance of a contract, no demand or notice is necessary before bringing an action.

The point first made at the hearing, that there was no evidence that the voyage to Callao was yet ended, comes too late. It is not raised by the pleadings, and does not appear to have been questioned at the trial. No question of law is raised by the exceptions in regard to it; and the evidence in reference to it, if any, is therefore not reported. So in reference to the ground, now first taken, that the right to purchase under the contract may have been exercised, and that the burden is upon the plaintiff to show that such right was not exercised, it is sufficient to say that this objection is not now open to the defendant.

The more important question arises upon the rule of damages given. The contract was an agreement to hire at a certain fixed rent for a period which was to end, at the option of the hirer, at the end of the contemplated voyage, or at the expiration of fourteen months. The chronometer was then to be returned to the plaintiffs. The article was not returned as stipulated; and, if this were all, it is plain that the plaintiffs would be entitled to recover the rent agreed for the whole period of fourteen months, and whatever the jury might find the value to be at the expiration of that time. That value would of course be affected by the consideration that its original value had been diminished by the period of its use, or on the other hand increased by the enhanced market value of such articles. Under the peculiar terms of this contract, it is claimed that this rule cannot prevail,

because the contract states the value of the article to be - $240 and requires that it shall be returned in the same good order as received. Upon the whole, we do not regard these provisions as intended by the parties to be conclusive between them upon the value of the article. In a subsequent clause, the right of the master to purchase within six months at that price is given. And the value seems to be named either in reference to that right of purchase or as mere matter of description. The agreement that it shall be returned in the same good order does not provide against that deterioration which comes from ordinary use and wear. In order to give the recital of value the conclusive character contended for, it must appear from the whole contract that the parties intended to liquidate the damages. Such interpretation will not be given unless the clear intention and the subject matter require it; and is never favored by the courts. *Fisk* v. *Gray*, 11 Allen, 132. 2 Greenl. Ev. §§ 257–259. Such sums named are rather to be treated as penalties, so as to open the inquiry as to the actual damage suffered. It is proper, however, for the jury to take into consideration whatever evidence is afforded by the contract itself by way of admission of value by the parties, and to that extent the recital is material.

As to the allowance of interest on the value of the chronometer, while it is true that it is not to be allowed in the sense in which it is added in contracts for the payment of money, yet as a measure of damages it is proper for the jury to add it. 3 Parsons on Contracts, (5th ed.) 105, note. Sedgwick on Damages, 380.

The instructions of the learned judge in the matter of damages are alone erroneous. The plaintiffs are entitled to recover the stipulated hire of the chronometer for the fourteen months, with the value of the instrument at the expiration of that period, and interest on the whole amount so ascertained from the same time. Upon a contract of this description, upon a failure to return the property at the stipulated time, with no suggestion of special damage, interest on the value of the property from the time it was agreed to be delivered is a reasonable measure of damage for its detention.

All the other questions having been settled by the jury under rulings to which no exception can be taken, the new trial must be confined to the assessment of damages alone according to the rule here given.

*Exceptions of both plaintiffs and defendant sustained; and a new trial ordered on the question of damages only.*